<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| **DARWIN NATIONAL ASSURANCE COMPANY,** | : | |
| | : | |
| | : | |
| | : | **Civil Action No. 13-7197 (ES) (JAD)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **FAHY CHOI, LLC, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**SALAS, DISTRICT JUDGE**

## I.  INTRODUCTION

Before the Court are the parties' cross-motions for summary judgment in a declaratory judgment action regarding coverage under an insurance policy issued by Plaintiff Darwin National Assurance Company ("Plaintiff" or "Darwin").  (D.E. Nos. 74, 75).  The Court has considered the parties' submissions, as well as the parties' contentions presented at the December 1, 2015 oral argument.  For the following reasons, the Court denies Defendants' motion for summary judgment, (D.E. No. 74), and grants Plaintiff's motion for partial summary judgment, (D.E. No. 75).

## II.  BACKGROUND

### A.  Facts

This is a suit seeking a declaration that Darwin has no duty to defend or indemnify Defendants Fahy Choi, LLC ("the Firm"), Anne Fahy as Executor for the Estate of John J. Fahy, Jr. ("the Estate"), Benjamin Choi, Dongho Song, or Ida Marks (collectively, "the Firm Defendants") in connection with an action filed by Defendant Vivien Thorsen against the Firm,

1

the Estate, and the Firm Defendants (the "Thorsen Action").  (*See generally* D.E. No. 1, Complaint ("Compl.")).

## 1.   The Firm and the Policy[1]

The Firm is a limited liability company formed in September 2003 by members John J. Fahy, Jr. and Choi; the Firm employed, among others, Marks (a legal secretary) and Song (an associate attorney).  (Pl. SMF ¶¶ 8, 9, 11, 12).   In July 2012, Choi, as managing member of the Firm, applied to Plaintiff for legal malpractice insurance coverage, listing nine attorneys to be covered.  (Def. SMF ¶ 13; Pl. SMF ¶ 14; D.E. No. 75-6, Exhibit A to Declaration of Brett C. Arruda ("Policy"), at Application).   On August 1, 2012, Plaintiff issued a "claims-made-and-reported"[2] policy ("the Policy") insuring the Firm, its members, and employees against legal malpractice claims for the policy period of August 1, 2012 to August 1, 2013; that period was extended for an additional two years upon the Firm's exercise of an extended-reporting-period option.  (Def. SMF ¶¶ 3, 4, 6; Pl. SMF ¶ 17; *see generally* the Policy).   The Policy was the first professional liability policy issued by Plaintiff to the Firm, and had limits on liability of $1,000,000 per claim and in the aggregate for all claims.  (Pl. SMF ¶¶ 9, 10; Policy, at Declarations, Item 2). Rather than providing a retroactive date after which wrongful acts are covered, the Policy instead provides full prior acts coverage, subject to the Policy's terms, conditions, and exclusions.  (Pl. SMF ¶ 11; Policy § II.T & Declarations, Item 7).

---

[1] The Court takes these facts from the following submissions: D.E. No. 74-2, Defendants' Statement of Material Facts Not in Dispute ("Def. SMF"); D.E. No. 75-3, Plaintiff Darwin National Assurance Company's Response to Defendants' Statement of Material Facts Not in Dispute ("Pl. Resp. SMF"); D.E. No. 75-2, Plaintiff Darwin National Assurance Company's Statement of Material Facts Not in Dispute Pursuant to Local Civil Rule 56.1 ("Pl. SMF"); D.E. No. 76-2, Defendants' Responses to Darwin's Statement of Material Facts Not in Dispute ("Def. Resp. SMF").

[2] The "claims-made-and-reported" policy covers claims first made during the policy period or any extended reporting period that are reported to the insurer in accord with the policy's terms.  (*See* Policy).

The Policy provides coverage for anyone counted as an "Insured," which the Policy defines to mean, in relevant part, "the Named Insured"; "any lawyer . . . listed in the Application, on the day the Policy Period incepts until such time as the lawyer or professional corporation ceases to be a member . . ."; "any lawyer . . . who becomes a partner, officer, director, stockholder or shareholder or employee of the Named Insured during the Policy Period . . ."; "any other person who is employed . . . by the Named Insured as a legal secretary, paralegal, . . . or other legal office staff member . . . ;" and "the estate . . . of any Insured in the event of such Insured's death, . . . but only to the extent that such Insured would otherwise be provided coverage under this policy." (Pl. SMF ¶¶ 11, 12; Policy § II.I).  The Firm is identified as the "Named Insured," (Pl. SMF ¶ 13; Policy, at Declarations, Item 1), and both Mr. Fahy and Choi were listed in the application for coverage, (Pl. SMF ¶ 14; Policy, at Application).

Most relevant to these motions, the Policy provides that Plaintiff will pay, on behalf of an Insured,

> all amounts in excess of the Retention shown in the Declarations, that an Insured becomes legally obligated to pay as Damages and Claims Expenses because of a Claim arising out of a Wrongful Act . . . that is first made during the Policy Period or any Extended Reporting Period.  *It is a condition precedent to coverage under this Policy that the Wrongful Act upon which the Claim is based occurred:*
>
> 1. during the Policy Period; *or*
>
> *2. on or after the Retroactive Date and prior to the Policy Period, provided that all of the following three conditions are met:*
>
>> (a) the Insured did not notify any prior insurer of such Wrongful Act or Related Act or Omission; *and*
>>
>> *(b) prior to the inception date of the first policy issued by the Insurer if continuously renewed, no Insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such Wrongful Act or Related Act or Omission might reasonably be expected to be the basis of a Claim against any Insured; and*

3

> (c) there is no policy that provides insurance to the Insured for such liability or Claim.

(Pl. SMF ¶ 11; Policy § I.A (emphasis added)).  The most important language from that section for purposes of these motions is the following, which the parties and the Court refer to as the "Prior Knowledge Condition":

> It is a condition precedent to coverage under this Policy that the Wrongful Act upon which the Claim is based occurred . . . on or after the Retroactive Date and prior to the Policy Period, provided that . . . prior to the inception date of the first policy issued by the Insurer if continuously renewed, no Insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such Wrongful Act or Related Act or Omission might reasonably be expected to be the basis of a Claim against any Insured.

The Policy defines a "Claim" as (1) "any written notice or demand for monetary relief or Legal Services;" (2) "any civil proceeding in a court of law;" (3) "any administrative proceeding, other than a Disciplinary Proceeding;" or (4) "a request to toll or waive a statute of limitations;" that is "made to or against any Insured seeking to hold such Insured responsible for damages for a Wrongful Act."  (Policy § II.C).

## 2.  The Thorsen Action

On or about July 29, 2013, the Firm notified Darwin of a potential claim arising out of Mr. Fahy's representation of Defendant Thorsen. (Pl. SMF ¶ 18).  On July 31, 2013, the Firm forwarded to Darwin a copy of a letter from Thorsen's counsel, which the Firm characterized "as an official notice of claim." (*Id.* ¶ 19; D.E. No. 75-5, Declaration of Darwin Claims Manager Brett C. Arruda ("Arruda Decl.") ¶ 8).  On November 4, 2013, Defendant Thorsen filed an action in New Jersey Superior Court against the Firm, the Firm Defendants, and the Estate,[3] asserting, *inter alia*, professional malpractice in the mishandling of Thorsen's employment-related suit.  (Pl. SMF

---

[3] Thorsen's complaint includes claims against additional defendants, (*see generally* D.E. No. 74-16, Verified Complaint in *Vivien Thorsen v. Anne Fahy, as Executor of the Estate of John J. Fahy, Jr., et al.*); neither those claims nor those defendants are germane to this matter.

¶¶ 20, 21; *see generally* D.E. No. 74-16, Verified Complaint in *Vivien Thorsen v. Anne Fahy, as Executor of the Estate of John J. Fahy, Jr., et al.* ("Thorsen Compl.")).

Specifically, Thorsen's complaint alleges that Thorsen retained Mr. Fahy and the Firm in January 2010 for the purpose of filing claims against Thorsen's former employer for sexual harassment, discrimination, wrongful discharge, and retaliation. (Pl. SMF ¶ 21; *see also* Thorsen Compl., at 2). The complaint further alleges that Mr. Fahy informed Thorsen in May 2010 that he had instituted the lawsuit but that no such lawsuit was ever filed, (Pl. SMF ¶ 21; *see also* Thorsen Compl., at 14), and that Mr. Fahy made misrepresentations to her about the progress of the lawsuit throughout 2011 and 2012 despite no lawsuit having been filed, (Pl. SMF ¶ 21; *see also* Thorsen Compl., at 15-16). Finally, Thorsen's complaint alleges that the statute of limitations applicable to her employment-related claims expired on January 25, 2012. (Pl. SMF ¶ 21; *see also* Thorsen Compl., at 17).

### B. Procedural History

On November 27, 2013, Darwin filed the instant declaratory judgment action. (Pl. SMF ¶ 22). The complaint alleges one count; Darwin seeks a declaration that the Prior Knowledge Condition has not been satisfied as to the Thorsen Action and, thus, the Policy does not afford coverage for that action. (*Id.*). All Defendants filed answers. (*See* D.E. Nos. 5, 12, 56, 62, 62, 68). Defendant Thorsen filed a counterclaim with her answer, seeking declarations that New Jersey Supreme Court Rules and New Jersey public policy require Darwin to provide full indemnity coverage for the Thorsen Action (count one), that Thorsen is entitled to full indemnity coverage as an intended third-party beneficiary of the Policy (count two), that Darwin shall provide full indemnity coverage to the Firm, Choi, Song, and the Firm's "attorneys and employees" in the Thorsen Action (count three), and that the Policy shall be reformed to provide $1,100,000 in

coverage rather than $1,000,000 to accord with New Jersey law (count four).  (*See* D.E. No. 68, First Amended Answer to Complaint, Affirmative Defenses, and Counterclaim ¶¶ 39-42).

Pursuant to this Court's scheduling orders and the parties' joint discovery plan, (D.E. Nos. 64 (Joint Discovery Plan), 67 (Global Briefing Schedule), 71 (Revised Global Briefing Schedule), 73 (Further Revised Global Briefing Schedule)), the parties filed cross-motions for summary judgment with the aim of resolving threshold legal issues and, ideally, expediting the litigation, (*see* D.E. Nos. 74, 75).  Indeed, at this point in the litigation, "Darwin is not asking the Court to make any factual finding as to Mr. Fahy's knowledge.  Rather, Darwin asks only that the Court decide . . . the threshold issue . . . framed by Defendants' Motion"; namely, whether the Prior Knowledge Condition is valid and enforceable and applies to all insureds.  (D.E. No. 75-4, Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of its Cross Motion for Partial Summary Judgment ("Pl. Mov. Br.") at 3).  Darwin also seeks summary judgment on Defendant Thorsen's reformation count.  (*Id.* at 30).  Likewise, Defendants seek dismissal of Darwin's complaint on purely legal grounds.  (D.E. No. 74-3, Joint Brief on Behalf of Defendants in Support of a Joint Motion for Summary Judgment ("Def. Mov. Br.") at 1-3).

Each party submitted opposition to their respective adversary's motion.  (*See* D.E. Nos. 76, 77).  The motions are now ripe for resolution.

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine" issue of material fact

exists for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the movant meets this burden, the non-movant must then set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* at 324; *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).

Conversely, where the moving party bears the burden of proof at trial, it "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007).  "Put another way, it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238 (footnote omitted).

Notably, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  But the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Swain v. City of Vineland*, 457 F. App'x 107, 109 (3d Cir. 2012) (stating that non-moving party must support its claim "by more than a mere scintilla of evidence").

Finally, "[t]he summary judgment standard does not change when . . . the parties have filed cross-motions for summary judgment." *Wimberly Allison Tong & Goo, Inc. v. Travelers Prop.*

*Cas. Co. of Am.*, 559 F. Supp. 2d 504, 509 (D.N.J. 2008) (citing *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987)), *aff'd*, 352 F. App'x 642 (3d Cir. 2009). "Such motions[] 'are no more than a claim by each side that it alone is entitled to summary judgment . . . .'" *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

## IV. ANALYSIS

### A. *Burford* Abstention[4]

Defendants urge this Court to abstain from exercising jurisdiction over this matter under the *Burford* abstention doctrine. (Def. Mov. Br. at 43). Defendants argue that federal review of this matter would disrupt New Jersey's efforts to establish a coherent policy governing coverage for "innocent insureds" and "innocent third-parties" in the legal malpractice context. (*Id.* at 44-45). Defendants also assert that abstaining would eliminate the risk of frustrating the uniformity of state law as to coverage of claims. (*Id.* at 45-46).

The judicially created doctrine of abstention "represents an extraordinary and narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 303 (3d Cir. 2004) (citation and internal quotation marks omitted). Thus, abstention is appropriate only in the exceptional and limited circumstances when state court decision of an issue clearly would serve an important interest countervailing the federal court's duty to exercise its jurisdiction. *Id.* (citations omitted).

Under *Burford* abstention, "a federal court should refuse to exercise its jurisdiction in a manner that would interfere with a state's efforts to regulate an area of law in which state interests

---

[4] The Court addresses this issue first because a ruling favorable to Defendants on abstention would obviate the need to address the remaining issues.

predominate and in which adequate and timely state review of the regulatory scheme is available."
*Chiropractic Am. v. LaVecchia*, 180 F.3d 99, 104 (3d Cir. 1999) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 332-34 (1943)).  "The purpose of *Burford* is to 'avoid federal intrusion into matters of local concern and which are within the special competence of local courts.'"  *Hi Tech Trans, LLC*, 382 F.3d at 303-04 (quoting *Chiropractic Am.*, 180 F.3d at 104).  The Supreme Court has defined the *Burford* doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (citation omitted).  Thus, only where timely and adequate state review is available should the Court go on to address the doctrine's two prongs.  *Hi Tech Trans, LLC*, 382 F.3d at 304 (citation omitted).

The second prong itself comprises three questions; namely, "(1) whether the particular regulatory scheme involves a matter of substantial public concern; (2) whether it is the sort of complex technical regulatory scheme to which the *Burford* abstention doctrine usually is applied; and (3) whether federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy."  *Chiropractic Am.*, 180 F.3d at 105 (citations and internal quotation marks omitted).

This Court declines to abstain from presiding over this action.  Notably, Defendants "are not questioning this Court's ability to hear and rule on the issues in this case."  (D.E. No. 76, Defendants' Consolidated Brief in Reply to Darwin's Opposition to Defendants' Motions for Summary Judgment and in Opposition to Darwin's Cross Motion for Partial Summary Judgment

("Def. Opp. Br.") at 23; *see also* Def. Mov. Br. at 43 ("So there is no confusion, Defendants do not question this Court's ability to decide this case . . . .")).  Additionally, "Defendants acknowledge this Court has subject matter jurisdiction over this action."  (Def. Opp. Br. at 23).  Instead, Defendants argue that if the Court has "any reservation" about presiding over the matter, it would be appropriate to abstain from this case.  (*See id.* at 24).

The Court has no reservations in respect of deciding the issues presented here.  This case involves insurance contract interpretation.  Federal courts in this Circuit routinely engage in that type of analysis.  *See, e.g.*, *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (interpreting policy under New Jersey law and predicting how New Jersey court would rule); *Innes v. St. Paul Fire & Marine Ins. Co.*, No. 12-234, 2015 WL 5334580, *4-9 (D.N.J. Sept. 11, 2015) (interpreting insurance contract pursuant to New Jersey law); *Am. Guar. & Liab. Ins. Co. v. Falk*, No. 10-2165, 2011 WL 4499282, at *1, 4-5 (D.N.J. Sept. 27, 2011) (applying New Jersey law in interpreting insurance policy to resolve coverage question).

To the extent Defendants contend that certain New Jersey public policy issues present a permissible reason to abstain under *Burford*, the Court again has no reservations in deciding those issues.  As more fully detailed below, New Jersey case law, federal decisions applying New Jersey law, and the decisional law of other jurisdictions have provided sufficient guidance permitting this Court to predict how the New Jersey Supreme Court would decide the issues involved here.

Furthermore, the Court disagrees that it would be appropriate to abstain from this case.  When a district court properly has jurisdiction over a case, its duty to preside over the matter is "virtually unflagging."  *Hi Tech Trans, LLC*, 382 F.3d at 303.  Abstention is the exception, not the rule, and is invoked only in extraordinary circumstances.  *Id.*  In a case arising under diversity

jurisdiction, a district court applies the appropriate state law,[5] and where the state's highest court has not spoken on the relevant legal issue, this Court must predict how the state's highest court would decide that issue. *See Colliers*, 458 F.3d at 236. Defendants have not provided any reason establishing that New Jersey's interest in deciding these issues outweighs this Court's duty to exercise jurisdiction and predict how the New Jersey Supreme Court would resolve this matter. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (noting balancing of federal interests against state interests that is necessary in resolving *Burford* abstention issue and stating that balancing "only rarely favors abstention").

Defendants assert that the case involves complex issues of state law and that this Court could, by presiding over this case, frustrate New Jersey's efforts to establish a coherent policy in the area of insurance coverage of allegedly innocent insureds. (*See* Def. Mov. Br. at 42-43, 45-46). Moreover, Defendants contend that the case involves issues of public policy that are better left to New Jersey courts to decide. (*See id.* at 44-46).

But every insurance coverage dispute will, in some sense, bear implications for members of the public. Courts in this circuit have nevertheless decided such issues. *See, e.g.*, *Colliers*, 458 F.3d at 239-43 ("[W]e must determine if applying the exclusion according to its plain meaning would violate public policy as well as the objectively reasonable expectations of the insured."). And, *Burford* abstention is generally improper in insurance coverage cases unless the case presents complex regulatory issues. *Cf. Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 959 (3d Cir. 1993) ("Although the regulation of insolvent insurance companies is surely an important state interest, this case does not involve the complex and highly regulated issues of insurance regulation; rather, it is a simple contract action involving an allegedly unpaid debt."). No such issues exist

---

[5] Neither party disputes that New Jersey law applies to this case.

here.  Defendants merely contend that, first, a condition precedent does not apply to the Policy and, therefore, the failure to satisfy the condition should not prevent coverage under the Policy, (Def. Mov. Br. at 11-13); and, second, that certain New Jersey Supreme Court decisions have expressed a public policy in favor of extending coverage in these circumstances, notwithstanding the condition precedent to coverage remaining unsatisfied, (*id.* at 29-31).  As noted, district courts routinely decide issues involving insurance contract interpretation and enforcement, and the Court has sufficient guidance to resolve Defendants' public policy arguments in a manner consistent with New Jersey state jurisprudence.

Therefore, this Court declines to abstain and will proceed to resolve the issues presented by the parties' motions.

### B.  The Prior Knowledge Condition

Defendants argue that the plain meaning of the Prior Knowledge Condition makes clear that the Condition does not apply to Defendants' Policy for the following reasons.  Defendants say that the phrase "if continuously renewed" modifies the phrase "first policy issued by the Insurer," which means that the Prior Knowledge Condition only applies to policies that are continuously renewed.  (Def. Mov. Br. at 11-13; Def. Opp. Br. at 6-7).  In turn, Defendants argue, because their policy was not renewed—indeed, Darwin only ever issued one policy to Fahy Choi, LLC—the Condition does not apply to them.  (Def. Mov. Br. at 11-13; Def. Opp. Br. at 6-7).

Plaintiff argues that the Prior Knowledge Condition plainly applies to the Policy.  (Pl. Mov. Br. at 11).  According to Plaintiff, when Darwin only ever issues one policy to an insured, that policy is, by definition, the "first policy issued by the insurer."  (*Id.* at 13).  Further, Plaintiff asserts that Defendants' proposed interpretation leads to the absurd result of coverage for certain claims—

like the one made against the Firm, the Firm Defendants, and the Estate in this case—depending on whether a renewal policy is issued.  (*See id.* at 13-14.)

Under New Jersey law, "[d]etermination of the proper coverage of an insurance contract is a question of law."  *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atl. Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n*, 837 A.2d 1096, 1098 (N.J. Super. Ct. App. Div. 2003)).  Accordingly, the "interpretation of an insurance contract . . . can be resolved on summary judgment."  *Foodtown, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 05-3627, 2008 WL 3887617, at *1 (D.N.J. Aug. 20, 2008) (quoting *Adron, Inc. v. Home Ins. Co.*, 679 A.2d 160, 165 (N.J. Super. Ct. App. Div. 1996)).

The aim of insurance-contract interpretation is to divine the parties' intentions from the policy language; all parts of the policy must be given effect in order to give its terms a reasonable meaning.  *See State Nat'l Ins. Co. v. Cty. of Camden*, 10 F. Supp. 3d 568, 574 (D.N.J. 2014).  When the terms and language are clear and unambiguous, a policy will be enforced as written, in line with the plain and ordinary meaning of the language.  *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citations omitted).

But a genuine ambiguity will arise if "the policy is so confusing that the average policyholder cannot make out the boundaries of coverage," *Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.*, 21 A.3d 1151, 1158 (N.J. 2011) (citation and internal quotation marks omitted), or if the policy language is open to two or more reasonable interpretations, *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) (citation omitted); *see also Flomerfelt*, 997 A.2d at 997 (stating ambiguity in policy exclusions is discerned by considering whether more than one fair interpretation of language exists).

"In determining whether a contract is ambiguous, a court must consider the words of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings." *Newport Assocs. Dev. Co. v. Travelers Indem. Co. of Ill.*, 162 F.3d 789, 792 (3d Cir. 1998) (citations and internal quotation marks omitted) (applying New Jersey law).  Not just "any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage." *Flomerfelt*, 997 A.2d at 996 (citation and internal quotation marks omitted). Instead, courts must determine ambiguity by employing a "fair interpretation of the language." *Id.* (citation and internal quotation marks omitted).

In that connection, although New Jersey law requires ambiguous language to be construed in favor of the insured, that rule "will not be permitted to have the effect of making a plain agreement ambiguous and then construing it in favor of the insured." *Passaic Valley Sewerage Comm'rs*, 21 A.3d at 1158 (citation omitted); *see also Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73-74 (3d Cir. 2009) ("New Jersey caselaw does not require that we credit every conceivable deconstruction of contractual language, but rather instructs that the doctrine of ambiguity should be invoked only to resolve genuine ambiguities, not artificial ambiguities created by semantical ingenuity." (citations and internal quotation marks omitted)).  Rather, reasonable meaning must be given to an insurance policy's "form and cast" when evaluating whether a genuine ambiguity is present. *Royal Ins. Co. of Am.*, 563 F.3d at 74 (citation and internal quotation marks omitted).

In the event genuinely ambiguous language is present, a court must interpret that language in favor of coverage, thus giving effect to the objectively reasonable expectations of the insured. *See Flomerfelt*, 997 A.2d at 996 (citation omitted); *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992).  When construing ambiguous language, a court considers "whether clearer

14

draftsmanship by the insurer would have put the matter beyond reasonable question." *Passaic Valley Sewerage Comm'rs*, 21 A.3d at 1158 (citation omitted).  When faced with an ambiguity, however, a court may not, in construing a policy, "write for the insured a better policy of insurance than the one purchased."  *Flomerfelt*, 997 A.2d at 996 (citations and internal quotation marks omitted).  Indeed, the New Jersey Supreme Court has instructed that, in the context of exclusionary language, a court should not "disregard the 'clear import and intent' of a policy's exclusion."  *Id.* (citation omitted).

Finally, "[a]lthough not a canon of construction, courts frequently look to how other courts have interpreted the same or similar language in standardized contracts to determine what the parties intended, especially where rules in aid of interpretation fail to offer a clear result."  *Chubb Custom Ins. Co.*, 948 A.2d at 1290 (citation omitted).

The Court finds that the subject language is open to only one reasonable interpretation. Specifically, the Court interprets the relevant policy language to mean the following: when Darwin only issues one policy to an insured—as is the case here—that policy is, by definition, not continuously renewed, but the Condition nevertheless applies, and coverage will not be afforded where any insured, prior to the policy's inception date, had a "basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such Wrongful Act or Related Act or Omission might reasonably be expected to be the basis of a Claim against any Insured," (Pl. SMF ¶ 11; Policy § I.A).

Defendants' plain-language argument—that the plain and ordinary meaning, determined according to rules of grammar, requires an interpretation that a first, singular policy purchased by an insured is not subject to the Prior Knowledge Condition—is unavailing.  Such an interpretation ignores the manifest purpose of the Condition, which is to "protect [the insurer] . . . against the

professional who, recognizing his past error or omission, rushes to purchase a 'claims made' policy before the error is discovered and a claim asserted against him." *Zuckerman v. Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 403 n.3 (N.J. 1985); *see also Navigators Specialty Ins. Co. v. Scarinci & Hollenbeck, LLC*, No. 09-4317, 2010 WL 1931239, at *16 (D.N.J. May 12, 2010) ("An insurer cannot properly evaluate the risk of taking on an insured if it is not aware of the possibility of future claims. The possibility of these claims will necessarily impact the price at which the insurer will agree to take on the insured, as an insurer will incur costs in defending and indemnifying against future claims . . . .").

Defendants argue, in the alternative, that the language is ambiguous, requiring this Court to interpret the provision in favor of coverage to comport with Defendants' reasonable expectations. (Def. Mov. Br. at 14-16). But New Jersey law requires courts only to turn to those interpretational tools when faced with a genuine ambiguity. *See Flomerfelt*, 997 A.2d at 996 (citation omitted); *Voorhees*, 607 A.2d at 1260. That is, only when two or more *reasonable* interpretations of the language are available must a court interpret that language in favor of coverage in light of the insureds' reasonable expectations. *See Passaic Valley Sewerage Comm'rs*, 21 A.3d at 1158; *Chubb Custom Ins. Co.*, 948 A.2d at 1289; *see also Flomerfelt*, 997 A.2d at 997.

Here, Defendants' proposed interpretation is simply not reasonable. The New Jersey Supreme Court decision in *Flomerfelt* provides guidance. There, the court noted that, despite the canon of construction requiring a narrow interpretation of policy exclusions, such exclusions must not be interpreted without being mindful of their clear import and intent. *See Flomerfelt*, 997 A.2d at 996. The Court finds that the clear import and intent of the language is to prevent Darwin from being forced to provide coverage for acts known to the insured prior to the inception date of the policy. The inclusion of provisions such as the Prior Knowledge Condition has been recognized

16

as reasonable by numerous courts, including the New Jersey Supreme Court.  *See Zuckerman*, 495 A.2d at 403 n.3 ("The reasonableness of excluding claims based on prior conduct that the insured could reasonably have foreseen might serve as the basis for a future claim is apparent."); *Navigators Specialty Ins. Co.*, 2010 WL 1931239, at *16.

Defendants' proposed interpretation, by contrast, leads to an absurd result: a claim arising from a known prior wrongful act would be covered where the policy was not continuously renewed, but would not be covered where the policy was continuously renewed.   In the face of the Policy's clear intention to exclude coverage for claims based on known prior acts, there is no basis to find such a distinction reasonable, and Defendants have not suggested such a basis.

Other courts have interpreted provisions similar to the Prior Knowledge Condition as requiring the same result.  For example, in *Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liability Managers, LLC*, the court considered a policy that contained the following provision:

> This policy shall pay on behalf of the Insured all Damages and Claims Expenses that the Insured shall become legally obligated to pay, arising from any Claim first made against an Insured during the Policy Period and reported to the Insurer in writing during the Policy Period or within 60 days thereafter, for any Wrongful Act, *provided that prior to the inception date of the first Lawyer's Professional Liability Insurance Policy issued* by the Insurer to the Named Insured, *which has been continuously renewed and maintained in effect to the inception of this Policy Period*, the Insured did not know, or could not reasonably foresee that such a Wrongful Act might reasonably be expected to be the basis of a Claim.

No. 09-790, 2011 WL 3627287, at *2 (S.D. Ohio Aug. 17, 2011) (emphasis added), *aff'd*, 483 Fed. App'x 241 (6th Cir. 2012).  The insured law firm argued that the above provision barred coverage "only in cases where there had been a history of coverage through successive . . . liability policies [issued by the same insurer] on behalf of the insured with seamless renewals contract after contract."  *Id.* at *5.

The district court rejected that argument, stating that the proposed interpretation was "inconsistent with both the plain language and the intent of the policy," and declaring that the provision clearly would apply if the insured's awareness of a wrongful act predated the inception date of the first policy the insurer issued. *See id.* Moreover, the court pointed out that the insured's proposed interpretation would effectively render the purpose of the provision meaningless for claims made during the first year of the policy. *Id.*

In sum, the clear purpose of the Prior Knowledge Condition, a purpose recognized as reasonable by the New Jersey Supreme Court, courts in this district, and in others, is to bar coverage for claims arising out of wrongful acts committed prior to the policy inception date about which an insured was aware. The phrase "if continuously renewed" does not alter that clear intent. Because Defendants' interpretation is not reasonable, and, as noted above, only one reasonable interpretation exists, no genuine ambiguity inheres in the subject language that would require this Court to interpret the language in favor of coverage in this instance. Accordingly, the Court concludes that the Prior Knowledge Condition applies to the Darwin-Fahy Choi, LLC Policy.

### C. Public Policy Arguments

Defendants argue that Darwin should be prevented from disclaiming coverage as to certain insureds—namely, Defendants Firm, Choi, Song, and Marks—because of those insureds' allegedly "innocent"[6] status in respect of their knowledge of Mr. Fahy's alleged wrongful acts. (*See* Def. Mov. Br. at 29-31). More specifically, Defendants seek a ruling from this Court requiring Darwin to provide coverage for the *Thorsen* Action, notwithstanding application of the Prior Knowledge Condition, on the ground that a New Jersey court would likely extend such

---

[6] The Court notes that judgment in favor of Defendants as a matter of law on this ground would be inappropriate even if the Court determined that public policy would prevent Darwin from applying the Condition to certain of the Defendants. Fact discovery would be required to determine the alleged "innocent" status of those Defendants.

coverage on public policy grounds.  (*See id.* at 19-31).  Although both parties agree that no New Jersey case is directly on point, (*see id.* at 18; Pl. Mov. Br. at 29), Defendants rely heavily on the New Jersey Supreme Court's decisions in *First American Title Insurance Co. v. Lawson*, 827 A.2d 230 (N.J. 2003), and *Sparks v. St. Paul Insurance Co.*, 495 A.2d 406 (N.J. 1985), arguing that, taken together, those decisions express a public policy requiring a legal malpractice insurer to provide coverage to "innocent" insured attorneys when application of a legal malpractice insurance policy unrealistically limits coverage in a manner contrary to the reasonable expectations of those attorneys and harmful to the public, (*see* Def. Mov. Br. at 29-31; Def. Opp. Br. at 16-17).

When interpreting applicable state law, this Court turns to the guidance provided by the state's highest court in respect of the relevant issue.  *See Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011) (citing *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 436 (3d Cir. 2006)). But where, as here, that state court has not spoken on the topic, this Court must predict how that court would resolve the issue.  *Id.* (citing *Canal Ins. Co.*, 435 F.3d at 436).  The following considerations guide that prediction: "(1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue."  *Id.* (citing *Canal Ins. Co.*, 435 F.3d at 436).

Here, the Court predicts that a New Jersey court would not bar the application of the Prior Knowledge Condition in these circumstances.

Defendants' reliance on *Lawson* and *Sparks* is misplaced.  In *Lawson*, the court addressed an insurer's attempt to rescind a legal malpractice insurance policy in its entirety.  Wheeler, the managing partner of a New Jersey-based, three-attorney law firm organized as a limited liability partnership, had knowingly made material misrepresentations in the insurance application he

submitted on behalf of the firm and its members. *See Lawson*, 827 A.2d at 232-34. Those misrepresentations aided the firm in securing malpractice coverage. *Id.* at 233-35. When claims were made against the firm, the insurer denied the claims and filed an action alleging that the firm's policy "was void by reason of the material misrepresentation." *Id.* at 235.

Another of the firm's attorneys, Snyder, was considered by the *Lawson* court to be "an innocent partner." *Id.* at 240. The court noted that Snyder did not engage in any fraudulent conduct, was unaware of grievances filed against the firm's other attorneys, conducted firm business in a separate satellite office in Manhattan that Snyder alone maintained, and had no knowledge of Wheeler's actions. *Id.* Indeed, Lawson, another attorney who "knew or should have known that the forms submitted to the [insurer] contained false or misleading information," *id.* at 239, testified that Snyder "did not engage in any misappropriation and had no knowledge of any improprieties that the firm was foundering," *id.* at 240.

The insurer's attempt to rescind the policy forced the court to answer whether Wheeler's "misrepresentations should result" in rescission of coverage as to the firm as an entity and each individual attorney, including Snyder. *Id.* at 239. The Court determined that rescission was appropriate as to Wheeler, Lawson, and the firm. *Id.* at 239-40.

But the Court held "that the equities d[id] not warrant rescission of Snyder's coverage." *Id.* at 241. The Court found that "voiding Snyder's coverage solely because of his partners' wrongful conduct potentially would expose Snyder to uninsured liability in a manner inconsistent with his expectations under" New Jersey's statutes governing limited liability entities. *Id.* at 240. Additionally, "voiding the policy in respect of Snyder would mean that he no longer would possess coverage for any of his actions in unrelated matters, including simple malpractice, that might have occurred during the period of anticipated coverage," which "would be inconsistent with the

20

policies underlying [the] . . . Rules of Court that seek to protect consumers of legal services by requiring attorneys to maintain adequate insurance in this setting." *Id.* at 240-41 (citation omitted).

Clearly, the *Lawson* court expressed a concern for Snyder as an "innocent insured," for members of the public who may have purchased legal services from Snyder, and for the vindication of policies underlying the New Jersey Supreme Court rules. Moreover, the court noted that Snyder reasonably would have expected the limited liability form that the firm took to insulate him from liability for his partners' wrongful acts.

But the *Lawson* court expressed those concerns in the limited context of the rescission remedy that the insurer sought. The court stressed the limited extent of its holding not once, but twice, first stating:

> *We express no opinion* regarding Snyder's actual liability to any party, or *regarding whether any allegation against Snyder is excluded from coverage in accordance with the policy's contractual terms*. Our sole task is to determine whether the policy itself is void as a matter of law as applied to Snyder.

*Id.* at 240 (emphasis added). Just two paragraphs later, the court stated:

> We thus conclude that the equities do not warrant rescission of Snyder's coverage. We reiterate that our holding is confined solely to that narrow legal question. *The Court does not suggest an opinion in respect of the scope of that coverage or any other issue as it might relate to the policy's existence insofar as Snyder is concerned.*

*Id.* at 241 (emphasis added). In short, the concern that *Lawson* expressed for "innocent insureds" and for the public consumers of legal services was expressed in the specific context of rescission.

Importantly, the rescission remedy engenders an extreme result. It acts to void a contract *ab initio*—that is, from its inception. *See Rutgers Cas. Ins. Co. v. LaCroix*, 946 A.2d 1027, 1035 (N.J. 2008). "In the field of insurance, rescission has long been recognized as an available and necessary remedy to combat fraudulent behavior by an insured," *id.*, treating coverage under the rescinded policy "as if it had never existed," *Lawson*, 827 A.2d at 232. For example, in *Lawson*,

rescission of the policy would mean that neither the firm nor any of its members "would possess coverage for any . . . actions . . . that might have occurred during the period of anticipated coverage." *Id.* at 240. Rescission is "an equitable remedy, which properly depends on the totality of circumstances in a given case and resides within a court's discretion." *Id.* at 241.

Darwin is not seeking, and has never sought, rescission in this case.[7] Darwin has asserted no ground for rescission, including any contention that an alleged misrepresentation by Mr. Fahy as to his knowledge of potential claims would support rescission. In fact, the complaint and Darwin's submissions are devoid of any allegation that Mr. Fahy made misrepresentations to Choi in the process of applying for the Policy.[8] Instead, Darwin is asserting in this litigation that Mr. Fahy knew certain of his actions to be likely to give rise to a claim and, because of that knowledge, the Prior Knowledge Condition has not been satisfied.

Where an attempt to rescind would void the Policy and prevent coverage for *any* claim asserted against Defendants, here, Darwin has denied coverage for the *Thorsen* Action only—a single claim—on the basis of the Prior Knowledge Condition's express language. The so-called "innocent insureds" here did not, because of Darwin's denial, lose coverage for any and all claims that could have been covered under the Policy, as they would have had Darwin sought rescission. In fact, the Firm purchased an optional two-year extended reporting period, which enabled the firm

---

[7] Although Defendants, in their moving brief, asserted that Darwin was seeking selective rescission only as to the *Thorsen* Action, (*see* Def. Mov. Br. at 27-31), Defendants abandoned that argument in their later submission, (*see* Def. Opp. Br. at 11 ("The public policy stated in *Lawson* is no less important because Darwin does not seek to void the policy.")), and at oral argument, where Defendants asserted the public policy implications considered by the *Lawson* court do not "evaporate" because a contract-based exclusion (rather than a rescission attempt) is at issue, (Transcript of 12/1/15 Oral Argument at 21:1 to 22:14).

[8] The Court rejects Defendants' argument that the Prior Knowledge Condition cannot apply because Mr. Fahy's alleged misrepresentations voided his coverage *ab initio*, negating his status as an insured and thus rendering his alleged knowledge of wrongful acts irrelevant. (*See* Def. Mov. Br. at 31-32). As noted, Darwin is not seeking rescission, and has not even alleged that Mr. Fahy made a misrepresentation that might support a request for rescission. Accordingly, the policy is not void *ab initio* as to Mr. Fahy, Mr. Fahy was an insured within the meaning of the policy during the relevant time period, and Mr. Fahy's actions and knowledge are indeed relevant to whether the Prior Knowledge Condition was or was not satisfied.

to report claims made against insureds between August 1, 2013 and August 1, 2015 that were based on wrongful acts committed prior to August 1, 2013 (the policy's termination date) and otherwise covered by the Policy. (Pl. SMF ¶ 17). Thus, the Firm, Choi, Song, and Marks were not excluded from coverage under the Prior Knowledge Condition for any potential claim except the *Thorsen* Action. The Policy essentially remained in effect until August 1, 2015 for claims that were otherwise covered.

The potential for harm to the public at large and to the innocent insureds envisioned by the *Lawson* court is simply not present here. The Court finds that applying *Lawson* to require coverage to the Defendants here would be an unjustified expansion of that decision. Although *Lawson* suggested that it might extend coverage to a firm where an innocent insured—rather than the misrepresenting insured—submitted an application without knowing of another insured's misrepresentations, that suggestion came in the context of rescission, *Lawson*, 827 A.2d at 240, and does not reflect a willingness to extend coverage to insureds like Defendants for claims that are clearly not covered by the Policy.[9]

Nor is coverage under the Policy so unrealistically limited so as to violate public policy. In *Sparks*, the court was confronted with an insurance policy only covering claims made and reported during a twelve-month policy period that were based on wrongful acts that also occurred during that policy period. 495 A.2d at 408, 415. The *Sparks* court held that such a policy violated the reasonable expectations of the insured and public policy, recognizing that rarely, if ever, would

---

[9] The Court notes that courts in other circuits have recognized that insurance-seeking law firms can bargain for severability provisions that might insulate innocent insureds or by purchasing additional coverage against certain acts of firm employees. *See Bryan Bros. Inc. v. Cont'l Cas. Co.*, 660 F.3d 827, 832 (4th Cir. 2011) ("[The insured] was free to bargain for additional coverage against acts of its employees."); *Great Am. Ins. Co. v. Geostar Corp.*, No. 09-12488-BC, 2010 WL 845953, at *3, *5 (E.D. Mich. Mar. 5, 2010) (noting parties may bargain for severability provisions that exclude coverage only with respect to certain insureds). Although purchasing such provisions certainly would have caused the Policy premium to increase, Defendants had the opportunity to bargain for additional coverage, but did not.

a wrongful act, claim, and report of a claim occur within twelve months.  *Id.* at 414-15.  Defendants contend that *Sparks* stands for the proposition that "where insurance policy language unrealistically limits coverage, that unrealistic limitation will violate New Jersey's public policy and will also be unenforceable as contrary to the reasonable expectations of the insured, an objective standard."  (Def. Mov. Br. at 22).

Here, no member of Fahy Choi, LLC—including Mr. Fahy before his death—were insured under a policy whose coverage was so narrowly restricted that coverage would almost never attach. The Policy provides for full prior acts coverage and has no retroactive date.  (Pl. SMF ¶ 11; Policy § II.T & Declarations, Item 7).  The Policy also provides coverage for acts committed during the policy period.  (*See* Policy § I.A).  And, the Firm purchased an extended reporting period.  (Pl. SMF ¶ 17).  Thus, the instant claims-made-and-reported Policy provided coverage for *any* act that occurred during or prior to the policy period, so long as no insured had the knowledge prohibited by the Prior Knowledge Condition, and extended the time during which a claim could be reported. Instead of providing for unreasonably limited coverage, the Policy here provides ample coverage and opportunities to report claims.  And, as previously noted, the New Jersey Supreme Court in *Zuckerman*—which was decided on the same day as *Sparks* and also delivered by Justice Stein— noted the manifest reasonableness of excluding coverage for claims based on known prior conduct. *See Zuckerman*, 495 A.2d at 403 n.3.

Additionally, the extent of coverage for these circumstances does not conflict with the objectively reasonable expectations of the insureds.  The Policy sets out, in clear and unambiguous language, that claims based on wrongful acts of which an insured is aware prior to the policy period will not be covered.  Both "Claim" and "Insured" are clearly defined.  In light of the express language, it would be unreasonable to expect that some insureds would be covered for the *Thorsen*

24

Action.  In fact, the Policy includes a provision entitled "Protection for the Innocent Insureds" that spells out the situations in which an insured's lack of knowledge of wrongdoing will permit extending coverage to such an insured on a claim, despite another insured's actions forming the basis for excluding coverage for such a claim.  (*See* Policy § IV.K).  The circumstances presented here do not comprise one of those situations.  And, the clear intention of the Policy is to *prevent* coverage for claims based on wrongful acts known to *any* insured prior to the inception date of the Policy.  (*See id.* §§ I.A.2(b), II.C, II.I).

Courts in this district have enforced prior knowledge provisions that exclude coverage as to all insureds, including innocent ones.  For example, in *Navigators Specialty Ins. Co.*, the court determined that the insurer had no duty to defend or indemnify a defendant law firm or its defendant attorneys for a claim based on acts that were known and expected to give rise to a claim, "[e]ven assuming that only [one of the attorneys] had knowledge of acts, errors, or omissions that occurred before the inception of the policy and could reasonably be expected to be the basis of the claim."  *See* 2010 WL 1931239, at *16-17.

Furthermore, Defendants have not cited any case that has struck down a prior knowledge exclusion on public policy grounds, and this Court has found none.  Instead, courts in this Circuit and others have upheld prior knowledge provisions in the face of public policy challenges.  *See, e.g.*, *Colliers*, 458 F.3d at 240 ("Taken together, *Zuckerman* and *Sparks* imply that an exclusion in a 'claims made' policy which is properly designed to prevent the 'moral hazard' of a professional 'recognizing his past error or omission' and 'rush[ing] to purchase a "claims made" policy before the error is discovered and a claim is asserted against him' is reasonable and not a violation of public policy."); *Fishman v. Hartford*, 980 F. Supp. 2d 672, 681 (E.D. Pa. 2013) (noting that prior knowledge provisions that "exclude coverage when, before the inception of the insurance contract,

an insured had prior knowledge of an otherwise recoverable circumstance" are routinely upheld and refusing to strike down such a provision "merely because it omit[ted] the word reasonably" before "could have foreseen" (citation and internal quotation marks omitted)); *Darwin Nat'l Assurance Co. v. Hellyer*, No. 10-50224, 2011 WL 2259801, at *4-5 (N.D. Ill. June 7, 2011) (holding that, as to an identically worded Prior Knowledge Condition, "[t]here is nothing overly broad or illusory about excluding coverage under the policy for conduct that occurred prior to the effective date of the policy . . . if there was any basis for the insured to believe that the conduct could result in a claim").

Accordingly, for all the foregoing reasons, the Court predicts that a New Jersey court would not bar application of the Prior Knowledge Condition.

### D. *DeMarco v. Stoddard* and Reformation

Defendants Thorsen and the Estate argue in their moving brief that the Appellate Division decision in *DeMarco v. Stoddard*, 844 A.3d 965 (N.J. Super. Ct. App. Div. 2014), *rev'd*, 2015 WL 7722997, at *1 (N.J. Dec. 1, 2015), requires that Darwin be required to provide coverage for the *Thorsen* Action. (Def. Mov. Br. at 33-37). Those same Defendants also rely on *DeMarco* for the proposition that the Policy must be reformed to provide coverage up to $1,100,000, rather than the $1,000,000 outlined in the policy. (*See id.* 37-42).

The appellate panel held in *DeMarco* that "[t]he rescission remedy available to an insurance carrier . . . does not permit a malpractice policy to be voided from its inception and in its entirety when an innocent patient seeks coverage." *DeMarco*, 844 A.3d at 975. The Appellate Division grounded its reasoning in analogous case law in the context of automobile insurance, in which New Jersey "courts have refused to declare an auto policy void from its inception and in its entirety as to injured third parties who did not benefit from the fraud committed in procuring the

26

policy.  Instead, the voided policies are reformed to provide the minimum liability coverage mandated by law." *Id.* at 974.  The court reasoned that, "[b]ecause New Jersey mandates auto insurance coverage," and, thus, "innocent third parties who use the roadways can reasonably expect that other motorists will comply with the law and be covered by a liability policy," *id.*, "medical patients can reasonably assume New Jersey doctors are complying with the law and carrying compulsory malpractice insurance" because New Jersey mandates medical malpractice coverage, *id.* at 975.  In that light, the Appellate Division held that "[i]nsurance coverage in at least the minimum compulsory amount should remain available for the benefit of innocent patients who suffered injuries when the policy was in effect," even when an insurer has a basis for rescinding the policy.  *See id.*

Defendants Thorsen and the Estate contend that, because Thorsen is an innocent third party who purchased legal services from a law firm required to carry professional malpractice insurance, that, to be consistent with *DeMarco*, Darwin must provide coverage for the *Thorsen* Action up to the reformed coverage amount of $1,100,000.  (Def. Mov. Br. at 33-42).

But the New Jersey Supreme Court recently reversed the Appellate Division, rejecting its reasoning and holding that "the same reasons that permit rescission of a legal malpractice insurance policy pertain to medical malpractice liability insurance," *DeMarco*, 2015 WL 7722997, at *7, and that "the compulsory automobile insurance model has no relevance to the remedial response to a fraudulently obtained policy of professional liability insurance and the effect of  rescission on innocent third parties," *id.* at *8.  The court reasoned that, much different from the automobile liability insurance context, "the [New Jersey] Legislature has not constructed a similar matrix of alternate remedies for any other type of liability insurance, including compulsory professional

liability insurance, or created an expectation that insurance coverage will be available to redress an injury even in the face of a fraudulently obtained policy." *Id.*

Even if the Appellate Division decision remained the law, Defendant Thorsen's and Defendant Estate's arguments must fail. It was the insurer's attempted *rescission* of the insurance policy that pushed the Appellate Division to craft an equitable remedy in *DeMarco*. As noted previously, Darwin is not seeking, and has never sought, rescission of the instant Policy. Thus, no "mold[ing] and shap[ing]" of the rescission remedy is appropriate here to protect the interests of an "innocent" third party. *See Demarco*, 84 A.3d at 974 n.1. Instead, Darwin has denied coverage on the basis of an express contractual provision. In these circumstances, the Court's task is to interpret and enforce the insurance policy's terms, provided that they do not violate public policy. *See Zuckerman*, 495 A.2d at 404 ("A condition to the enforcement of insurance contracts is that they not violate public policy." (citations omitted)). As already discussed, the Policy here does not violate public policy. Accordingly, nothing suggests that the New Jersey Supreme Court would engage in any sort of equitable analysis in terms of the effect that Darwin's contract-based denial of coverage will have on Thorsen.

Moreover, when taken to its logical end, the rule advocated by Defendants Thorsen and the Estate—*i.e.*, that a legal malpractice insurer cannot deny coverage on the basis of an express contractual provision when an "innocent" third-party purchaser of legal services sues the insured—would result in the prohibition of most contract-based denials of coverage. Indeed, almost all legal malpractice victims are "innocent" in the sense that they have nothing to do with the wrongful rendering of legal services giving rise to the legal malpractice action. The ultimate effect would be a requirement that legal malpractice insurers cover all claims, despite the presence of express

language excluding particular claims, which would make insuring the risk of malpractice economically impossible.

Finally, even outside the New Jersey Supreme Court's decision as to reformation in *DeMarco*, which stated that "[t]he appellate panel . . . erred by reforming the rescinded policy to require the insurer to defend and indemnify its insured up to the mandatory minimum amount of coverage required in this State," *DeMarco*, 2015 WL 7722997, at *1, Defendant Thorsen and Defendant Estate have not established a basis for reforming the Policy.

First, these Defendants have presented no evidence, let alone clear and convincing evidence, that both parties to the Policy labored under any misapprehension as to a particular and essential fact at the time the contract was formed, as required to seek reformation on mutual mistake grounds. *See Ill. Nat'l Ins. Co.*, 653 F.3d at 231-32 (citing *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 659-60 (N.J. 1989)). Further, Defendants Thorsen and the Estate have not argued grounds that would support reformation due to unilateral mistake, which requires that "'a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party.'" *Ensey v. Gov't Emp'rs Ins. Co.*, 92 F. Supp. 3d 253, 261 (D.N.J. 2015) (quoting *Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228, 236 (D.N.J. 2011)).

Instead, Defendants Thorsen and the Estate base their reformation claim on a New Jersey Supreme Court rule, the Firm's certificate of liability insurance, and a screenshot of the Firm's website at the time the *Thorsen* claim was first made. (Def. Mov. Br. at 37-42). These Defendants contend that New Jersey Court Rule 1:21-1B(a)(4)—which requires law firms organized as limited liability companies to maintain an insurance policy that provides at least $100,000 of coverage per attorney—along with the certificate of insurance and screenshot—both which purport to show that the Firm employed eleven attorneys—mandate reformation of the Policy to allow for $1,100,000

of coverage (*i.e.*, $100,000 multiplied by eleven attorneys).  (*Id.*).  But the certificate of liability insurance is dated August 27, 2012, (*see* D.E. No. 74-7), and the screenshot is time-stamped July 31, 2013, (*see* D.E. No. 74-8), both dates well after the Policy's August 1, 2012 inception date.  Even if the alleged "misapprehension" is that Darwin and the Firm were mistaken as to the number of attorneys employed by the Firm—a dubious proposition and one not clearly advanced by Defendants Thorsen and the Estate—the exhibits do not establish such a misapprehension *at the time the contract was formed*.

Second, Defendants Thorsen and the Estate have cited no authority indicating that the appropriate remedy for the failure to maintain legal malpractice coverage in accordance with New Jersey Court Rule 1:21-1B is reformation of the insurance policy to conform with that Rule.  Indeed, the New Jersey Supreme Court's recent decision in *Jarrell v. Kaul*, 123 A.3d 1022 (N.J. 2015), suggests that such a remedy is inappropriate.  The *Jarrell* court rejected the notion that an injured patient's direct cause of action for malpractice could lie against a physician who failed to carry the mandatory minimum amount of malpractice insurance.  *See id.* at 1040.  The Court finds it unlikely that a New Jersey court would permit reformation in the context of legal malpractice but prohibit such reformation in the context of medical malpractice.  Instead, the failure to carry legal malpractice insurance in the amount prescribed by Rule 1:21-1B(a)(4) is remedied by New Jersey Supreme Court discipline, *see* R. 1:21-1B(a)(3), much like the violation of the statute requiring medical malpractice coverage in specific amounts, *see* N.J.S.A. 45:9-19.17(b).

Accordingly, the Court denies the motion for summary judgment on the grounds raised by Defendants Thorsen and the Estate.  Plaintiff's motion for summary judgment on Defendant Thorsen's reformation count is granted.

## V.  CONCLUSION

For the reasons above, Defendants' motion for summary judgment is denied. Plaintiff's motion for partial summary judgment is granted.  The Prior Knowledge Condition applies to the Darwin-Fahy Choi, LLC policy.  To be clear, the Court makes no ruling as to whether that Condition has or has not been satisfied.  Fact discovery must proceed to resolve that question.  An appropriate order follows this opinion.

s/ *Esther Salas*
**Esther Salas, U.S.D.J.**